Ryan C. Bykerk (SBN CA 274534)
Joseph M. Dietrich (SBN CA 328296)
GREENBERG TRAURIG, LLP
18565 Jamboree Road, Suite 500
Irvine, California 92612
Telephone: 949.732.6500
Facsimile: 949.732.6501
bykerkr@gtlaw.com
joe.dietrich@gtlaw.com

Jason B. Jendrewski (Admitted Pro Hac Vice)
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
Telephone: 212.801.9268
jason.jendrewski@gtlaw.com

Attorneys for Defendant VICTORIA'S SECRET & CO.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANITA HERRERA, individually and on behalf of all others similarly situated, | CASE NO.  3:23-cv-06654-MMC |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, STRIKE CLASS CLAIMS, AND STAY ACTION PENDING ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| VICTORIA'S SECRET & CO., a Delaware Corporation; and DOES 1 through 10, inclusive, | *[Filed Concurrently with Declaration of Jason B. Jendrewski, Declaration of Traci Hayes, Declaration of Mina Ching, and [Proposed] Order]* |
| Defendants. | Date:       April 17, 2026 |
| | Time:      9:00 a.m. |
| | Ctrm:       7 |
| | Action Filed:     December 28, 2023 |
| | FAC Filed:       May 22, 2024 |
| | SAC Filed:       July 22, 2025 |
| | Trial:         None Set |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 17, 2026, at 9:00 a.m., or as soon as the matter may be heard, in the courtroom of the Honorable Maxine M. Chesney, located at 450 Golden Gate Avenue, Courtroom 7, 19th Floor, San Francisco, California 94102, defendant Victoria's Secret & Co. ("Victoria's Secret") will move this Court, under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, for an order compelling plaintiff Juanita Herrera to submit her claims to binding arbitration, dismissing her class claims, and staying further judicial proceedings in this action pending completion of the arbitration proceeding thus ordered (the "Motion").

Good cause exists for this Motion because Herrera agreed to arbitrate all the claims she asserts in her Complaint by affirmatively assenting to the binding arbitration and class action waiver provisions of Victoria's Secret's Rewards Program Terms and Conditions and its website's Terms of Use. All of Herrera's claims against Victoria's Secret fall squarely within the parties' agreement to arbitrate.

This Motion is made after Victoria's Secret's Motion to Transfer Venue (Dkt. No. 69). If the Court grants that motion, then this Motion is for the U.S. District Court for the Southern District of Ohio to hear and decide. Only if the Court denies the Motion to Transfer Venue should this Court—the U.S. District Court for the Northern District of California—entertain or decide this Motion.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the supporting Declaration of Jason B. Jendrewski and exhibits thereto, the supporting Declaration of Traci Hayes and exhibits thereto, the supporting Declaration of Mina Ching and the exhibits thereto, the [Proposed] Order, the papers, records, and documents on file in this matter, and such oral argument and documentary evidence as may be presented at the hearing on this Motion.

                                        Respectfully submitted,

Dated:  December 12, 2025              GREENBERG TRAURIG, LLP


                                        By:*/s/ Ryan C. Bykerk*
                                        Ryan C. Bykerk
                                        Jason B. Jendrewski
                                        Joseph M. Dietrich
                                        Attorneys for Defendant VICTORIA'S SECRET & CO.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................7

II.   RELEVANT PROCEDURAL HISTORY ........................................................7

III.  FACTUAL BACKGROUND ...........................................................................8

     A.    Victoria's Secret is an Inclusive Retailer that is Committed to Web Accessibility. ......................................................................................8

     B.    Herrera Is a Longstanding Customer Who Never Reported Any Issues. ...............9

     C.    Herrera Joined Victoria's Secret's Rewards Program and Affirmatively Assented to the Rewards Program's Terms and Conditions and the Website Terms of Use. ......................................................................9

     D.    Herrera Agreed to Arbitrate All Disputes with Victoria's Secret. ..........................12

          1.    The Rewards Program Terms and Conditions Contain an Arbitration Agreement Requiring Herrera to Arbitrate Her Claims. ...................................................12

          2.    The Website Terms of Use Contain an Arbitration Agreement Requiring Herrera to Arbitrate Her Claims. ...................................................14

     E.    The Rewards Program Terms and Conditions and the Website Terms of Use Contain Valid Class Action Waivers. ..................................................17

     F.    Despite Herrera's Agreement to Arbitrate, She Sued Victoria's Secret in Court. ..............................................................................17

IV.  LEGAL STANDARD ...................................................................................18

V.   ARGUMENT ..............................................................................................19

     A.    Herrera is Bound by the Arbitration Agreement under the FAA. ..........................19

     B.    Herrera's Claims Are Governed by the Arbitration Agreement. .............................23

     C.    The Court Should Strike or Dismiss Herrera's Class Allegations. ........................25

     D.    This Action Must Be Stayed Pending Arbitration. ................................................25

VI.  CONCLUSION ..........................................................................................26

1

## **TABLE OF AUTHORITIES**

2

**Federal Cases** ...................................................................................................**Page(s)**

3

*Aliff v. Vervent, Inc.*,
   Case No.: 20-cv-00697-DMS-AHG, 2020 WL 5709197 (S.D. Cal. Sep. 24, 2020)...........................20

4

5

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995)............................................................................................ 18

6

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)......................................................................................19, 25

7

8

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986)......................................................................................19, 23

9

*Bd. of Trs. of IBEW Loc. No. 640 v. Cigna Health & Life Ins. Co.*,
   No. 21-16424, 2022 WL 2805111 (9th Cir. July 18, 2022)......................................23

10

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022).............................................................................20, 21

11

12

*Burzdak v. Universal Screen Arts, Inc.*,
   Case No. 21-cv-02148-EMC, 2021 WL 3621830 (N.D. Cal. Aug. 16, 2021) .................... 20

13

*Carey v. Uber Techs., Inc.*,
   No. 1:16-cv-1058, 2017 WL 1133936 (N.D. Ohio May 17, 2017) ........................... 21

14

15

*Cavanaugh v. Fanatics*,
   LLC, 738 F. Supp. 3d 1285 (E.D. Cal. 2024) ................................................... 20

16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ........................................................................ 19

17

18

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003)....................................................................................... 18

19

*Clements v. T-Mobile USA, Inc.*,
   712 F. Supp. 3d 1290 (N.D. Cal. 2024) ......................................................... 24

20

*Crawford v. Beachbody, LLC*,
   No. 14cv1583-GPC(KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014).................. 21

21

22

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985).................................................................................18, 19

23

*Dhaliwal v. Ace Hardware Corp.*,
   No. 2:22-cv-00446-DAD-KJN, 2023 WL 2555471 (E.D. Cal. Mar. 17, 2023) ................25

24

*Dipito LLC v. Manheim Invs., Inc.*,
   No. 3:21-cv-01205-H-JLB, 2021 WL 5908994 (S.D. Cal. Dec. 14, 2021)...................20

25

26

*Dohrmann v. Intuit, Inc.*,
   823 F. App'x 482 (9th Cir. 2020) ................................................................... 21

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, STRIKE CLASS CLAIMS, AND
STAY ACTION PENDING ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1

## TABLE OF AUTHORITIES
## (CONTINUED)

**Federal Cases**.................................................................................................................**Page(s)**

*Epic Sys. Corp. v. Lewis*,
   584 U.S. 497 (2018).............................................................................................25

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995).............................................................................................20

*Ghazizadeh v. Coursera, Inc.*,
   737 F. Supp. 3d 911 (N.D. Cal. 2024) ................................................................22

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991)...............................................................................................19

*Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr.*,
   98 F.4th 463 (3d Cir. 2024) .................................................................................19

*Green Tree Fin. Corp.-Alabama v. Randolph*,
   531 U.S. 79 (2000)...............................................................................................19

*Hilbert v. Uber Technologies, Inc.*,
   24-090584 (AHA), 2025 WL 42725 (D.D.C. Jan. 7, 2025) ................................22

*Keebaugh v. Warner Bros. Ent. Inc.*,
   100 F.4th 1005, 1020 (9th Cir. 2024) .................................................................21

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019)........................................................................................23

*Martinez v. Leslie's Poolmart, Inc.*,
   Case No. 2:19-cv-00157-ODW, 2014 WL 5604974 (C.D. Cal. Nov. 3, 2014)..................................18

*Nestle Waters N. Am., Inc. v. Bollman*,
   505 F.3d 498 (6th Cir. 2007) ..............................................................................24

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ............................................................................20

*Oberstein v. Live Nation Ent., Inc.*,
   60 F.4th 505 (9th Cir. 2023) ....................................................................20, 21, 22

*Page v. GameStop Corporation*,
   No. 24-3428, 2025 WL 637441 (6th Cir. 2025) .................................................21

*Prostek v. Lincare Inc.*,
   662 F. Supp. 3d 1100 (E.D. Cal. 2023)...............................................................25

*Roberts v. Uber Techs., Inc.*,
   No. 23-CV-00545, 2023 WL 11833598 (W.D. Tex. Aug. 8, 2023).....................23

### TABLE OF AUTHORITIES
### (CONTINUED)

**Federal Cases**................................................................................................**Page(s)**

*Saizhang Guan v. Uber Techs., Inc.*,
    236 F. Supp. 3d 711 (E.D.N.Y. 2017) ...................................................................23

*Schoenduve Corp. v. Lucent Techs., Inc.*,
    442 F.3d 727 (9th Cir. 2006) ..................................................................................23

*Smith v. Spizzirri*,
    601 U.S. 472 (2024).................................................................................................26

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ...................................................................21

*Tucker v. United Wholesale Mortg., Inc.*,
    Case No. 24-1595, 2025 WL 1082316 (6th Cir. 2025) ...........................................24

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
    363 U.S. 574 (1960).................................................................................................19

*In re Verisign*, *Inc.*, *Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) .................................................................18

**State Cases**

*Pyles v. HSBC Bank USA, N.A.*,
    172 A.3d 903 (D.C. 2017) .......................................................................................23

*Shepard v. Edward Mackay Enters., Inc.*,
    148 Cal. App. 4th 1092 (2007) ...............................................................................18

**Federal Statutes**

9 U.S.C. §§ 1, *et seq.*............................................................................................................19

9 U.S.C. § 2...........................................................................................................................18, 19

9 U.S.C. § 3...........................................................................................................................19, 26

42 U.S.C. § 12181, *et seq.*......................................................................................................7

ADA.......................................................................................................................................7, 25

FAA.........................................................................................................................14, 17, 18, 19, 25

**State Statutes**

Cal. Civ. Code § 51, *et seq.*...................................................................................................7

Unruh Civil Rights Act .........................................................................................................7

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, STRIKE CLASS CLAIMS, AND
STAY ACTION PENDING ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Juanita Herrera agreed to arbitrate her claims against Victoria's Secret & Co. ("Victoria's Secret") on an individual basis, and the Court should compel her to do so.

Herrera is a longstanding customer of Victoria's Secret. She is a member of the Victoria's Secret & Pink Rewards Program ("Rewards Program") and a repeat user of Victoria's Secret's website, https://www.victoriassecret.com/us/ (the "Website"). When she signed up to be a Rewards Program member, and when she signed in to use the Website, she agreed to the Rewards Program's Terms and Conditions and the Website Terms of Use. These terms are accessible to those who, like Herrera, use a screen reader to navigate the Website. Each set of terms contains an arbitration agreement (collectively "Arbitration Agreement") and a class action waiver. Herrera re-affirmed her assent to those terms multiple times by signing into her account on the Website.

Despite the Arbitration Agreement and class action waiver to which she assented at least three times—and despite years of using the Website without issue—Herrera agreed to serve as the plaintiff in this civil class action lawsuit. She claims the Website is not fully and equally accessible to her and other blind or visually impaired persons in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA") and the Unruh Civil Rights Act, California Civil Code § 51, *et seq.* ("Unruh Act"). *See* Dkt. 52. Herrera's claims are meritless. Regardless, her decision to bring them here, in court, is a breach of her agreement to arbitrate. The Court should (1) compel Herrera to arbitrate her claims on an individual basis, (2) strike Herrera's class allegations, and (3) and stay this matter pending arbitration.

### II. RELEVANT PROCEDURAL HISTORY

On December 28, 2023, plaintiff Vivian Salazar filed this action against Victoria's Secret alleging violations of the ADA and the Unruh Act. *See* Dkt. 1. In spring of 2025, Salazar decided to leave the case, and her counsel sought to substitute Herrera as the new plaintiff. *See* Dkt. 37. On June 26, 2025, the Court permitted amendment. *See* Dkt. 48. On July 11, 2025, counsel filed a Second Amended Complaint with Juanita Herrera as the plaintiff. *See* Dkt. 52.

Because Herrera was a new plaintiff, Victoria's Secret had to restart its investigation. Initial information suggested that Herrera may have agreed, through Victoria's Secret's Rewards Program, to

arbitrate her claims. On July 18, 2025, Victoria's Secret requested further time to investigate, but before the request could be granted, Victoria's Secret was forced to file an Answer on July 25, 2025. *See* Dkt. 53 and Dkt. 55. The Answer asserted and preserved Victoria's Secret's defenses, including the right to compel Herrera to arbitrate her claims. *See* Dkt. 55.

To expedite its efforts to confirm Herrera had agreed to arbitrate, in late July and August 2025, Victoria's Secret asked Herrera's counsel to confirm Herrera's mailing addresses, email addresses, and phone numbers. *See* Dkt. 60-1 and Dkt. 60-2. Herrera ignored Victoria's Secret's requests. *See* Dkt. 60. Accordingly, Victoria's Secret requested an adjournment of the General Order ("GO") 56 dates to allow it to confirm Herrera had agreed to arbitrate without participating further in the GO 56 process. *Id*. On August 12, 2025, the Court denied Victoria's Secret's request but lifted the stay on discovery for the limited purpose of allowing Victoria's Secret to confirm Herrera's contact information through formal discovery. *See* Dkt. 62. Accordingly, Victoria's Secret served Herrera with Interrogatories limited solely to the information permitted by the Court's Order.[1] Declaration of Jason B. Jendrewski, dated December 12, 2025 ("Jendrewski Declaration"), ¶ 2, Exhibit A.

On September 10, 2025, Herrera responded to the Interrogatories. Jendrewski Declaration, ¶ 3, Exhibit B. The responses confirmed that Herrera is a member of Victoria's Secret's Rewards Program, that she affirmatively agreed to arbitrate the claims at issue, and that she reiterated her assent on multiple occasions. Declaration of Traci Hayes, dated December 11, 2025 ("Hayes Declaration"), ¶¶ 7, 10-17.

## III.   FACTUAL BACKGROUND

### A.   Victoria's Secret is an Inclusive Retailer that is Committed to Web Accessibility.

Victoria's Secret is a Delaware corporation headquartered in Reynoldsburg, Ohio, that owns and operates over 700 retail stores across the United States. Hayes Declaration, ¶ 3.Victoria's Secret also maintains the Website through which consumers can, among other things, sign up for the Rewards Program and purchase Victoria's Secret's products. *Id*. All Website users are subject to mandatory arbitration under the Website Terms of Use. *Id*., ¶ 15. Those Website users who join Victoria's Secret's Rewards Program must also affirmatively agree to the Rewards Program Terms and Conditions and the

---

[1] In its Interrogatories, Victoria's Secret disclaimed any intent to waive its right to compel arbitration by voluntarily invoking the litigation process and reserved all rights. Jendrewski Declaration, Exhibit A.

Website Terms of Use. *Id.*, ¶¶ 16, 17. Both sets of terms mandate the arbitration of disputes.

Inclusion is one of Victoria's Secret's core values, and Victoria's Secret's "commitment to creating an inclusive culture permeates everything we do, including the web." *Id.*, ¶ 4, Exhibit A. As such, Victoria's Secret is committed to ensuring the accessibility of the Website to all people, including individuals who are blind or visually impaired and use screen readers. *Id.*, ¶ 5. In support of this commitment, at all relevant times, Victoria's Secret has maintained robust policies and procedures, comprehensive training and resources, and dedicated teams (internal and external) focusing on the accessibility of the Website. *Id.*

### B.   Herrera Is a Longstanding Customer Who Never Reported Any Issues.

Herrera has held an online account with Victoria's Secret for more than 12 years, and she has accessed her account using sign-in credentials consisting of her email address and password. *Id.*, ¶ 8. In that time, she purchased goods from Victoria's Secret and used the Website. *Id.* Despite her long relationship with Victoria's Secret, Victoria's Secret has no record that Herrera ever complained about, or had any issues with, the Website. *Id.*, ¶ 9. Yet, Herrera now alleges that three years ago she tried to purchase bras and underwear through the Website for in-store pickup at retail locations in Moreno Valley and Riverside, California. *See* Dkt. 52, ¶ 28. She claims that the "Select Store" button did not work with her screen reader, preventing her from completing a purchase for an in-store pickup. *Id.* Notably, Herrera nowhere alleges that she could not sign in to her account.

### C.   Herrera Joined Victoria's Secret's Rewards Program and Affirmatively Assented to the Rewards Program's Terms and Conditions and the Website Terms of Use.

On May 28, 2024, Herrera signed up to become a member of Victoria's Secret's Rewards Program when she entered her log-in credentials through the Website and affirmatively clicked the "SECURE SIGN IN" button.[2]  Hayes Declaration, ¶ 10. By enrolling in the Rewards Program, Herrera

---

[2] Victoria's Secret initially launched the Rewards Program in 2023 with a pilot version applicable to a portion of Victoria's Secret's customers in select states.  Hayes Declaration, ¶ 18, Exhibit G.  The Rewards Program ultimately was rolled out to all customers, and existing online account holders were provided the opportunity to join the Rewards Program when they signed into their accounts and consented to the Terms and Conditions, among other required terms for participation in the Rewards Program.  *Id.*

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, STRIKE CLASS CLAIMS, AND STAY ACTION PENDING ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1  assented to the Rewards Program Terms and Conditions (updated on January 23, 2024) and the Website

2  Terms of Use (updated on January 18, 2024).[3] *Id*., ¶ 11, Exhibits D and E.

3       In particular, when Herrera visited the Website's account sign-in page on May 28, 2024 (and on

4  subsequent occasions), she entered her login credentials and signed into her online account on the

5  Website. *Id*. , ¶ 10. In doing so, she affirmatively clicked the "SECURE SIGN IN" button. *Id*. , ¶ *Id*. 10,

6  12. The following language appeared directly above the "SECURE SIGN IN" button when she joined the

7  Rewards Program on May 28, 2024:

8   

9            Upon clicking "SECURE SIGN IN" I acknowledge that I am becoming a
member of the VS & PINK Rewards program and accept the <u>VS & PINK

10            Rewards Terms</u>, <u>Terms of Use</u>, <u>Privacy Policy</u>, <u>Financial Incentive Notice
(California)</u>, and agree to receive marketing emails during VS & PINK
Rewards program registration.[4]

11  *Id*., ¶ 10, Exhibits B and C; Declaration of Mina Ching, dated November 25, 2025 ("Ching Declaration"),

12  ¶¶ 2-6, Exhibit A. All underlined terms, including the terms "<u>VS & PINK Rewards Terms</u>" and "<u>Terms

13  of Use</u>" on the sign-in screen, are hyperlinks so that a user can open and review the content of these links

14  prior to deciding whether to consent to their terms and become a member of the Rewards Program or

15  otherwise sign into their account. Hayes Declaration, ¶ 20. As such, Herrera was encouraged to review all

16  the terms in full, and by clicking the "SECURE SIGN IN" button, Herrera manifested an intent to be

17  bound by them. Below is a screenshot of the relevant portion of the sign in page as it appeared when

18  Herrera joined the Rewards Program.

19   

20   

21   

22   

23   

24   

25     [3] On or after January 14, 2025, Herrera assented to a new version of the Website Terms of Use
updated on that date. For purposes of this Motion, there are no material differences between the Website

26  Terms of Use updated on January 18, 2024, and the Website Terms of Use updated on January 14, 2025.
The relevant provisions quoted in this Motion are identical in both versions of the Website Terms of Use

27  to which Herrera consented.

28     [4] The same or materially similar language appeared directly above the "SECURE SIGN IN" button
on subsequent occasions when Herrera logged into her online account on the Website.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, STRIKE CLASS CLAIMS, AND
STAY ACTION PENDING ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Sign In

Email Address*

Password*                                                                SHOW

☑ Keep me signed in  ⑦                              Forgot Password  ›

Upon clicking "SECURE SIGN IN" I acknowledge that I am becoming a member of the VS &
PINK Rewards program and accept the VS & PINK Rewards Terms, Terms of Use, Privacy
Policy, Financial Incentive Notice (California), and agree to receive marketing emails during
VS & PINK Rewards program registration.

SECURE SIGN IN

*Id.*, Exhibit C; Ching Declaration, Exhibit A.

When Herrera joined the Rewards Program on May 28, 2024, and at all relevant times thereafter, the "SECURE SIGN IN" button and the foregoing language (or materially similar versions thereof) have been in text that is compatible with screen reading software. Hayes Declaration, ¶ 21. Similarly, the "VS & PINK Rewards Terms" and "Terms of Use" hyperlinks on the sign-in screen have been in text that is compatible with screen reading software, which identify these terms as hyperlinks so that a user can open and review the associated links prior to deciding whether to consent. *Id.*, ¶ 22. Thus, screen reading software like VoiceOver and JAWS, which Herrera purports to use, was (and is) able to audibly convey all of this information to Herrera. *Id.*, ¶ 24; Dkt. 52, ¶¶ 27, 30. In fact, Victoria's Secret tested the accessibility of the account sign-in page as it existed when Herrera joined the Rewards Program using screen reader software, and the testing confirmed that the screen reader read aloud all of the pertinent information depicted on the screen without issue. *Id.*, ¶ 25.

When a user clicks on the "VS & PINK Rewards Terms" hyperlink on the sign-in screen, the user is provided with the full text of the Rewards Program Terms and Conditions. *Id.*, ¶ 22. Similarly, when a user clicks on the "Terms of Use" hyperlink on the sign-in screen, the user is provided with the full text of the Website Terms of Use. *Id.* The Rewards Program's Terms and Conditions and the Website Terms of Use are in text that is compatible with screen reading software. *Id.*, ¶ 23. Thus, screen reading software

like VoiceOver and JAWS, which Herrera purports to use, was (and is) able to audibly convey the Terms and Conditions and the Website Terms of Use to Herrera. *Id*., ¶ 24; Dkt. 52, ¶¶ 27-30. In fact, Victoria's Secret tested the accessibility of the Terms and Conditions and the Website Terms of Use pages using screen reader software, and the testing confirmed that the screen reader read aloud all of the terms depicted on the screen without issue. *Id*., ¶ 25.

Herrera's assent to the Terms and Conditions and the Website Terms of Use cannot be disputed. Indeed, each time that Herrera logged into her account after she initially signed up, she reaffirmed her assent to the Rewards Program's Terms and Conditions and the Website Terms of Use.  For example, on May 24, 2025, during her last successful log in to her account, Herrera again affirmatively agreed to the Terms and Conditions and the Website Terms of Use. *Id*., ¶ 13. More recently, on July 11, 2025, Herrera was unable to successfully log in to her account due to an incorrect password, but she still assented to the Terms and Conditions and the Website Terms of Use. *Id*., ¶ 14. Herrera could not have joined the Rewards Program and signed into her online account without affirmatively clicking the "SECURE SIGN IN" button. *Id*., ¶ 17. Accordingly, it was impossible for Herrera to join the Rewards Program and sign into her online account without assenting to the Terms and Conditions and the Website Terms of Use. *Id*.

Victoria's Secret's business records show that Herrera clicked the "SECURE SIGN IN" button and logged into her account at least three times, including: (i) on May 28, 2024, when she joined the Rewards Program; (ii) on May 24, 2025, when she last successfully logged into her account; and (iii) on July 11, 2025, when she last attempted to log in to her account. *Id*., ¶ 12. Through her own actions, Herrera proved that the sign-in process was accessible, that she was able to join the Rewards Program, and that she affirmatively assented to its Terms and Conditions and the Website Terms of Use. Regardless of whatever other alleged barriers regarding the Website that Herrera claims exist (which Victoria's Secret denies), the Terms and Conditions and the Website Terms of Use always have been accessible to her.

### D.    Herrera Agreed to Arbitrate All Disputes with Victoria's Secret.

#### 1.    The Rewards Program Terms and Conditions Contain an Arbitration Agreement Requiring Herrera to Arbitrate Her Claims.

At all relevant times, including on May 28, 2024, when Herrera joined the Rewards Program and

affirmatively agreed to its Terms and Conditions, the Terms and Conditions began with the following

language:

> PLEASE READ THE FOLLOWING TERMS CAREFULLY. THEY CONTAIN IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND OBLIGATIONS IN THE *VICTORIA'S SECRET & PINK* REWARDS PROGRAM (THE "PROGRAM").
>
> THIS AGREEMENT CONTAINS A MANDATORY DISPUTE RESOLUTION PROVISION AND ARBITRATION AGREEMENT WITH A CLASS ACTION WAIVER THAT AFFECT YOUR LEGAL RIGHTS. THIS ARBITRATION AGREEMENT REQUIRES THAT DISPUTES BE RESOLVED IN INDIVIDUAL ARBITRATION OR SMALL CLAIMS COURT PROCEEDINGS. IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS LESS DISCOVERY AND APPELLATE REVIEW THAN IN A COURT PROCEEDING. PLEASE REVIEW THOSE SECTIONS CAREFULLY.
>
> BY PARTICIPATING IN THE PROGRAM YOU AGREE TO ACCEPT THESE PROGRAM TERMS AND CONDITIONS (THE "TERMS") AND ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTAND, AND CONSENT TO THESE TERMS AND TO THE <u>VICTORIA'S SECRET PRIVACY POLICY</u>, <u>TERMS OF USE</u>, AND ANY OTHER APPLICABLE TERMS AND AGREEMENTS RELATED TO YOUR USE OF OUR SITES AND SERVICES, ALL OF WHICH ARE EXPRESSLY INCORPORATED BY REFERENCE.

*Id.*, Exhibit D (emphasis and capitalization in original). The Terms and Conditions also include a robust

"Dispute Resolution" section, which contains a "Binding Arbitration" section and provides, in pertinent

part:

> **Please read this section carefully – it may significantly affect your legal rights.  It contains procedures for mandatory pre-dispute resolution, binding arbitration, and jury trial and class action waiver.**
>
> In the unlikely event that we have a dispute that cannot be resolved through customer service, you and we agree to these provisions.  You and we may each be referred to herein as a "party" or collectively as the "parties."
>
> \*    \*    \*    \*    \*
>
> **B. Binding Arbitration.**
> If we cannot resolve a Dispute as set forth in Section 10(A) within sixty (60) days of receipt of the fully completed notice, then ANY AND ALL DISPUTES ARISING BETWEEN YOU AND VICTORIA'S SECRET (WHETHER BASED IN CONTRACT, STATUTE, REGULATION,

13

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, STRIKE CLASS CLAIMS, AND STAY ACTION PENDING ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

ORDINANCE, TORT—INCLUDING, BUT NOT LIMITED TO, FRAUD, ANY OTHER INTENTIONAL TORT OR NEGLIGENCE—COMMON LAW, CONSTITUTIONAL PROVISION, RESPONDEAT SUPERIOR, AGENCY OR ANY OTHER LEGAL OR EQUITABLE THEORY), WHETHER ARISING BEFORE OR AFTER THE EFFECTIVE DATE OF THESE TERMS, MUST BE RESOLVED BY FINAL AND BINDING ARBITRATION. THIS INCLUDES ANY AND ALL DISPUTES BASED ON ANY PRODUCT OR SERVICE PURCHASED THROUGH OR PROVIDED BY VICTORIA'S SECRET OR ADVERTISING MADE AVAILABLE BY VICTORIA'S SECRET. Dispute shall be interpreted broadly. For U.S. residents, the Federal Arbitration Act ("FAA"), not state law, shall govern the arbitrability of all Disputes, including the "No Class Action Matters" set forth in Section 10(D) below. If you reside in the U.S. (and as applicable to U.S. residents), you agree that this constitutes a transaction in interstate commerce and certain portions of this Section 10 are deemed to be a "written agreement to arbitrate" pursuant to the FAA. You and Victoria's Secret agree that we intend that this Section 10 satisfies the "writing" requirement of the FAA. BY AGREEING TO ARBITRATE, EACH PARTY IS GIVING UP ITS RIGHT TO GO TO COURT AND HAVE ANY DISPUTE HEARD BY A JUDGE OR JURY TO THE FULLEST EXTENT PERMITTED BY LAW. YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN OR BRING CLASS ACTIONS OR REPRESENTATIVE ACTIONS….

*Id*. (emphasis and capitalization in original).

### 2.    The Website Terms of Use Contain an Arbitration Agreement Requiring Herrera to Arbitrate Her Claims.

At all relevant times, including on May 28, 2024, when Herrera joined the Rewards Program and affirmatively agreed to the Website Terms of Use, the Website Terms of Use began with the following language:

Please read this entire agreement carefully. It sets forth the legally binding terms and conditions for your use of the Service and the products and services available for sale through the Service.

**THIS AGREEMENT INCLUDES A BINDING ARBITRATION AGREEMENT WITH A CLASS ACTION WAIVER THAT AFFECTS YOUR RIGHTS. THE ARBITRATION AGREEMENT REQUIRES THAT DISPUTES BE RESOLVED IN INDIVIDUAL ARBITRATIONS OR SMALL CLAIMS COURT PROCEEDINGS. IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS LESS DISCOVERY AND APPELLATE REVIEW THAN IN COURT.**

* * * * *

**Overview**

Welcome! The following Terms of Use ("**Terms**") apply to all visitors or users of our Victoria's Secret, Victoria's Secret PINK, Victoria's Secret Beauty, and Victoria's Secret Swim websites, blogsites, microsites, and mobile websites (each, a "**Site**"), our mobile applications (each, an "**App**") and your use of interactive features, widgets, plug-ins, content, downloads and/or other online services that we own and control and that post a link to these Terms (collectively with each Site and each App, the "Service"). The Service is made available by Victoria's Secret ("**Victoria's Secret**", "**we**", "**our**" or "us")[.] As referred to in these Terms, "Victoria's Secret" refers to Victoria's Secret Direct Brand Management, LLC, or Victoria's Secret Stores Brand Management, LLC, and other companies affiliated with these companies.

<u>If you want to access or use the Service</u>, then carefully read these entire Terms (including all links to details), as they constitute a written agreement between you and us and they affect your legal rights and obligations. Each time you access and/or use the Service (other than to simply read these Terms), you agree to be bound by and comply with these Terms and any Additional Terms (defined below) then posted. ***Therefore, do not use the Service if you do not agree***. In the event of a violation of these Terms, we reserve the right to seek all remedies available by law and in equity.

The business realities associated with operating the Service are such that, without the limitations that are set forth in these Terms, such as your grants and waivers of rights, the limitations on our liability, your indemnity of us, and the arbitration of certain disputes – we would not make the Service available                           to                           you.

By accessing and/or using the Service, you agree to be bound by these Terms. In some instances, both these Terms and separate guidelines, rules, or terms of use or sale setting forth additional or different terms and/or conditions will apply to your use of the Service or to a service or product offered via the Service … (in each such instance, and collectively "Additional Terms"). To the extent there is a conflict between these Terms and any Additional Terms, the Additional Terms will control unless the Additional Terms expressly state otherwise.

*Id*., Exhibits E and F (emphasis and capitalization in original). The "Dispute Resolution" portion of the

Website Terms of Use contain a "Binding Arbitration" section, which provides, in pertinent part:

PLEASE READ THIS ENTIRE SECTION CAREFULLY, AS YOU ARE WAIVING CERTAIN LEGAL RIGHTS IN THE EVENT OF ANY DISPUTE WITH US AND ARE AGREEING TO BINDING INDIVIDUAL ARBITRATION, AMONG OTHER THINGS.

In the unlikely event that we have a dispute that cannot be resolved through customer service, you and we agree to this dispute resolution agreement.

A. **Mandatory Informal Dispute Resolution Process for Disputes and Excluded Disputes.** If any controversy, allegation, or claim arises out of or relates to the Service (including gift cards offered via the Service), your relationship with Victoria's Secret, the Content, your User Content, these Terms, or any Additional Terms, whether based in contract, statute, regulation, ordinance, tort — including, but not limited to, fraud, any other intentional tort or negligence—common law, constitutional provision, respondeat superior, agency or any other legal or equitable theory (including, but not limited to, claims related to advertising, marketing, and communications practices), whether arising before or after the effective date of these Terms (collectively, "Dispute"), excluding claims pertaining to any of Victoria's Secret's actual or alleged intellectual property rights (an "Excluded Dispute"[]), which includes those actions set forth in Section 12(C), then you and we agree to make a good faith effort to resolve the Dispute informally prior to initiating a formal arbitration proceeding.

\*     \*     \*     \*     \*

The sole exceptions to the requirement to arbitrate are that: (1) either party may elect to have individual claims heard in small claims court if those claims otherwise qualify for small claims court and as long as the matter remains in such court and is not removed or appealed to a court of general jurisdiction; and (2) each party may bring suit in court to enjoin infringement or other misuse of intellectual property rights….

B. **Binding Arbitration**. If we cannot resolve a Dispute as set forth in Section 12(A) (or agree to arbitration in writing with respect to an Excluded Dispute) within sixty (60) days of receipt of the fully completed notice, then ANY AND ALL DISPUTES ARISING BETWEEN YOU AND VICTORIA'S SECRET (WHETHER BASED IN CONTRACT, STATUTE, REGULATION, ORDINANCE, TORT— INCLUDING, BUT NOT LIMITED TO, FRAUD, ANY OTHER INTENTIONAL TORT OR NEGLIGENCE,—COMMON LAW, CONSTITUTIONAL PROVISION, RESPONDEAT SUPERIOR, AGENCY OR ANY OTHER LEGAL OR EQUITABLE THEORY), WHETHER ARISING BEFORE OR AFTER THE EFFECTIVE DATE OF THESE TERMS, MUST BE RESOLVED BY FINAL AND BINDING ARBITRATION. THIS INCLUDES ANY AND ALL DISPUTES BASED ON ANY PRODUCT OR SERVICE PURCHASED THROUGH THE SERVICE OR ADVERTISING AVAILABLE ON OR THROUGH THE SERVICE. Dispute shall be interpreted broadly. For U.S. residents, the Federal Arbitration

Act ("**FAA**"), not state law, shall govern the arbitrability of all. Disputes, including the "No Class Action Matters" set forth in Section 12(D) below.  If you reside in the U.S. (and as applicable to U.S. residents), you agree that this constitutes a transaction in interstate commerce and certain portions of this Section 12 are deemed to be a "written agreement to arbitrate" pursuant to the FAA.  You and Victoria's Secret agree that we intend that this Section 12 satisfies the "writing" requirement of the FAA.  BY AGREEING TO ARBITRATE, EACH PARTY IS GIVING UP ITS RIGHT TO GO TO COURT AND HAVE ANY DISPUTE HEARD BY A JUDGE OR JURY.  TO THE FULLEST EXTENT PERMITTED BY LAW.  YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN OR BRING CLASS ACTIONS OR REPRESENTATIVE ACTIONS….

*Id*. (emphasis and capitalization in original).

**E.    The Rewards Program Terms and Conditions and the Website Terms of Use Contain Valid Class Action Waivers.**

At all relevant times, including on May 28, 2024, when Herrera joined the Rewards Program and affirmatively agreed to the Rewards Program Terms and Conditions, the Terms and Conditions contained the following valid Class Action Waiver:

YOU AND VICTORIA'S SECRET AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, PRIVATE ATTORNEY GENERAL OR REPRESENTATIVE PROCEEDING OR AS AN ASSOCIATION. Disputes will be arbitrated only on an individual basis and will not be joined or consolidated with any other arbitrations or other proceedings that involve any claim or controversy of any other party. There shall be no right or authority for any Dispute to be arbitrated on a class action basis or on any basis involving Disputes brought in a purported representative capacity on behalf of the general public, or other persons or entities similarly situated. This Section 10(D) (the class action waiver) is an essential part of these Terms . . . .

*Id*., Exhibit D (capitalization in original). The Website Terms of Use contain a materially identical Class Action Waiver. *See id.*, Exhibits E and F. In sum, Herrera agreed to bring claims against Victoria's Secret solely in an individual capacity and expressly waived her ability to participate in a class or other representative action against Victoria's Secret.

**F.    Despite Herrera's Agreement to Arbitrate, She Sued Victoria's Secret in Court.**

Despite her agreement to resolve all disputes against Victoria's Secret via individual arbitration, Herrera sued Victoria's Secret in this Court on behalf of a putative nationwide class. *See* Dkt. 52. If the Court denies Victoria's Secret's separate Motion to Transfer, it should compel Herrera to arbitrate her claims under the Arbitration Agreement for the reasons below.

## IV.  LEGAL STANDARD

The Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As Congress has expressed a strong public policy favoring arbitration, courts must "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

For the FAA to apply, an arbitration agreement only requires evidence of a transaction involving commerce. *See* 9 U.S.C. § 2. Courts construe this standard to encompass the full reach of Congress's commerce power. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). The dispute itself need not implicate interstate commerce for the FAA to apply. *Id.*; *see also Shepard v. Edward Mackay Enters., Inc.*, 148 Cal. App. 4th 1092, 1101 (2007) ("the pertinent question is whether the contract evidences a transaction involving interstate commerce, not whether the dispute arises from the particular part of the transaction involving interstate commerce."). Rather, the FAA governs any arbitration agreement that affects commerce in any way. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995).[5] It also governs where, as here, the parties' agreement invokes the FAA.  *See In re Verisign*, *Inc.*, *Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (holding that the FAA governed the issue of arbitrability "because the agreement expressly so provides"); *Martinez v. Leslie's Poolmart, Inc.*, Case No. 2:19-cv-00157-ODW (SKx), 2014 WL 5604974, at *3, n. 4 (C.D. Cal. Nov. 3, 2014) (finding that the FAA applies where "the arbitration agreement expressly provides that it is governed by the FAA").

Under the FAA, arbitration must be compelled where (1) "a valid agreement to arbitrate exists and, if it does," (2) "the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic*

---

[5] Here, the allegations at issue involve interstate commerce. Victoria's Secret is a multinational corporation that operates over 700 retail stores in the United States, maintains a website that is accessible in all fifty states, and regularly transports products across state lines.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, STRIKE CLASS CLAIMS, AND STAY ACTION PENDING ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The FAA was enacted to "reverse the longstanding judicial hostility to arbitration agreements" and place "arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Indeed, "[b]y its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218; *see also Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr.*, 98 F.4th 463, 472 (3d Cir. 2024) ("When a movant sufficiently establishes that a claim is subject to a valid arbitration agreement, district courts have no discretion and must send it to arbitration.").

As for whether an arbitration agreement encompasses a particular dispute, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960)). If a court compels arbitration, it shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

## V.    ARGUMENT

### A.    Herrera is Bound by the Arbitration Agreement under the FAA.

The FAA governs the Arbitration Agreement.[6] 9 U.S.C. §§ 1, et seq. Under the FAA, a written provision "in any . . . contract . . . involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the U.S. Supreme Court has emphasized, the FAA embodies a liberal federal policy favoring arbitration agreements. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 82 (2000).

Whether the parties have agreed to arbitrate is governed by state law principles of contract

---

[6] Here, the FAA applies because (1) the transaction affects interstate commerce, and (2) the Rewards Program's Terms and Conditions and the Website Terms of Use specifically invoke the FAA.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, STRIKE CLASS CLAIMS, AND STAY ACTION PENDING ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

formation. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Dipito LLC v. Manheim Invs., Inc.*, No. 3:21-cv-01205-H-JLB, 2021 WL 5908994, at *11 (S.D. Cal. Dec. 14, 2021). The Terms and Conditions and the Website Terms of Use both provide that they shall be "governed by and construed in accordance with . . . the laws of the State of Ohio, without regard to its conflicts of law provisions." Hayes Declaration, Exhibits D, E, and F.

While the parties' choice of law should govern, the Court should grant this Motion regardless of which law the Court applies. *See Burzdak v. Universal Screen Arts, Inc.*, Case No. 21-cv-02148-EMC, 2021 WL 3621830, at *3 (N.D. Cal. Aug. 16, 2021) (focusing on California law where the defendant stated that there is "no material difference" between Ohio and California law with respect to contract formation); *see also Aliff v. Vervent, Inc.*, Case No.: 20-cv-00697-DMS-AHG, 2020 WL 5709197, at *3 (S.D. Cal. Sep. 24, 2020) (finding that a choice of law provision was immaterial because "regardless of which state's law applies [(Ohio or California)], the evidence establishes that an agreement to arbitrate exists") (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (stating that the court "need not engage in this circular inquiry" of whether a choice of law provision applies to a disputed arbitration agreement when both states' laws "dictate the same outcome")). As described herein, Herrera unambiguously assented to the Terms and Conditions and the Website Terms of Use, with full notice of their terms, and, therefore, this Court should compel Herrera to arbitrate her claims regardless of whether Ohio or California law applies.

When analyzing whether a user has assented to an arbitration agreement through an online transaction, the Court must decide whether: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *see also Cavanaugh v. Fanatics*, LLC, 738 F. Supp. 3d 1285, 1294 (E.D. Cal. 2024) (same) (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023)). In determining whether there was reasonably conspicuous notice of the Terms and Conditions and the Website Terms of Use, the Court should examine notice from the perspective of a "reasonably prudent Internet user." *Berman*, 30 F.4th at 856.

Courts routinely find clickwrap agreements enforceable and conclude that hyperlinks to contract

terms coupled with a button to acknowledge agreement provide sufficient notice and manifestation of assent. *See, e.g.*, *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020 (9th Cir. 2024) (enforcing an agreement where "[d]irectly beneath the operative Play button is the following: 'By tapping "Play" I agree to the Terms of Service' or 'By tapping "Play" I accept the Terms of Use and acknowledge the Privacy Policy'"); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th at 513 ("Courts routinely find clickwrap agreements enforceable."); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (finding that notice and assent were established where the "Sign In" box was located directly above text stating, "[b]y clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of Use, and have read and acknowledged our Privacy Statement"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (enforcing an arbitration clause where the plaintiff clicked an "Accept" button placed above a hyperlinked statement indicating that clicking the button constituted assent to terms); *Crawford v. Beachbody, LLC*, No. 14cv1583-GPC(KSC), 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (holding that an agreement was formed where a hyperlinked notice was located directly above a "Place Order" button); *see also Page v. GameStop Corporation*, No. 24-3428, 2025 WL 637441, at *3 (6th Cir. 2025) (explaining that "[j]ust as someone who agrees to terms presented via a hyperlink can be bound even without clicking the link or reading them, by pressing "I Agree" when he had the opportunity to review, Page assented to the Pro Terms, including arbitration"); *Carey v. Uber Techs., Inc.*, No. 1:16-cv-1058, 2017 WL 1133936, at *4 (N.D. Ohio May 17, 2017) ("[C]ourts in both Ohio and California have found that clicking through relevant screens ... is an acceptable method to manifest assent to the terms of an agreement even where disputed terms are contained in a hyperlink.").

The same type of notice and assent took place here. On May 28, 2024, when signing into her account on the Website, Herrera was presented with fields to enter her email address and password as well as the following text:

> Upon clicking "SECURE SIGN IN" I acknowledge that I am becoming a member of the VS & PINK Rewards program and accept the <u>VS & PINK Rewards Terms</u>, <u>Terms of Use</u>, <u>Privacy Policy</u>, <u>Financial Incentive Notice (California)</u>, and agree to receive marketing emails during VS & PINK Rewards program registration.

Hayes Declaration, ¶ 10, Exhibits B and C; Ching Declaration, Exhibit A. All underlined terms, including

the terms "VS & PINK Rewards Terms" and "Terms of Use," are hyperlinks that allowed Herrera to review the content of those links before deciding whether to consent to the terms and join the Rewards Program (or subsequently sign into her account). Directly beneath this text was a prominent "SECURE SIGN IN" button, which stated that, by clicking, Herrera agrees to be bound by the VS & PINK Rewards Terms (*i.e.*, the Terms and Conditions) and the Website Terms of Use. Herrera clicked the "SECURE SIGN IN" button on May 28, 2024, and reaffirmed her assent to these terms on multiple other occasions, including on May 24, 2025, when she last successfully logged into her account, and on July 11, 2025, when she last attempted to log in to her account. Hayes Declaration, ¶¶ 10-14.

Herrera's ongoing Rewards Program membership with Victoria's Secret, evidenced by the multiple times she logged into her online account, shows that Herrera knew of her continuing relationship with Victoria's Secret. The nature of the relationship provides further notice to Herrera that she would be bound by the Terms and Conditions and the Website Terms of Use. *See Oberstein*, 60 60 F.4th at 517 (explaining that users making an online account through a "full registration process" should expect "'some sort of continuing relationship' that [puts] users on notice for a link to the terms of that continuing relationship") (citation omitted); *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 926 (N.D. Cal. 2024) (finding that "users of . . . a platform that offers . . . educational courses via pre-recorded videos, would similarly expect (or should expect) their access to the platform would be continual and governed by some terms of use").

It is immaterial that Herrera may be legally blind or visually impaired. First, when Herrea joined the Rewards Program on May 28, 2024, and at all relevant times thereafter, the "SECURE SIGN IN" button, the related acknowledgment text, the hyperlinks, the Terms and Conditions, and the Website Terms of Use were (and still are) compatible with screen reading software. Hayes Declaration, ¶¶ 20-25. Second, Herrera demonstrated that this sign-in process was accessible to her since she was able to join the Rewards Program and affirmatively assent to these terms on multiple occasions.

Courts routinely hold that visually impaired individuals like Herrera can be bound by terms and conditions, including arbitration agreements, when they are presented with such terms and required to take some action to affirmatively agree to them. *See Hilbert v. Uber Technologies, Inc.*, 24-090584 (AHA), 2025 WL 42725, at *3 (D.D.C. Jan. 7, 2025) (compelling the arbitration of a visually impaired

plaintiff's claims where the plaintiff used a screen reader and clicked "Confirm" beneath a message regarding an app's terms of use); *see also Roberts v. Uber Techs., Inc.*, No. 23-CV-00545, 2023 WL 11833598, at *2-3 (W.D. Tex. Aug. 8, 2023) (rejecting the plaintiff's argument that, because he was blind, he did not have reasonable notice of clickwrap arbitration agreement); *cf. Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 725 (E.D.N.Y. 2017) ("[E]ven when the failure to read the contract is attributable to the party's inability to read or understand the language in which the contract is written, the party is still bound by his or her assent."); *Pyles v. HSBC Bank USA, N.A.*, 172 A.3d 903, 907 (D.C. 2017) ("While appellant may have chosen to sign the contracts as she was going off to work, no allegation is made that she had no other choice than to sign at that point. Her signature on the documents must constitute assent unless it was obtained by fraud.").

Here, the result should be the same. Herrera took affirmative steps to agree to the Rewards Program Terms and Conditions and the Website Terms of Use. Therefore, she must be bound by her agreement to arbitrate.

### B.     Herrera's Claims Are Governed by the Arbitration Agreement.

Herrera's claims fall within the scope of the arbitration agreement. "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability," and "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019) (observing that the Supreme Court has "repeatedly held that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration").

Consistent with this principle of broad interpretation, the language "arising out of" contained in an arbitration agreement is interpreted broadly and "reach[es] all aspects of [the parties'] relationship." *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 732 (9th Cir. 2006); *see also Bd. of Trs. of IBEW Loc. No. 640 v. Cigna Health & Life Ins. Co.*, No. 21-16424, 2022 WL 2805111, at *1 (9th Cir. July 18, 2022) ("[T]he use of both 'arising out of' and 'relating to' indicates that the parties intended to include a broad arbitration provision.") (citation and quotation omitted); *Clements v. T-Mobile USA, Inc.*, 712 F.

Supp. 3d 1290, 1299 (N.D. Cal. 2024) ("The Arbitration Agreement is broad, encompassing all disputes with T-Mobile 'in any way related to or concerning' the Arbitration Agreement with T-Mobile, devices or services provided by T-Mobile, or T-Mobile's privacy policy."); *see also Tucker v. United Wholesale Mortg., Inc.*, Case No. 24-1595, 2025 WL 1082316, at *2 (6th Cir. 2025) (explaining that this court resolves any doubts concerning the scope of arbitrable issues in favor of arbitration, and "[t]hat presumption grows stronger when an 'extremely broad' arbitration clause embraces 'any controversy arising out of' the contract at issue") (quoting *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 505 (6th Cir. 2007)).

As relevant here, the Rewards Program's Terms and Conditions provide that "any controversy, allegation, or claim aris[ing] out of or relat[ing] to … any aspect of your relationship with us" constitutes a "Dispute" subject to the dispute resolution provisions of the Terms and Conditions. Hayes Declaration, Exhibit D. The Terms and Conditions further provide that "ANY AND ALL DISPUTES ARISING BETWEEN YOU AND VICTORIA'S SECRET (WHETHER BASED IN CONTRACT, STATUTE, REGULATION, ORDINANCE . . . OR ANY OTHER LEGAL OR EQUITABLE THEORY) . . . , WHETHER ARISING BEFORE OR AFTER THE EFFECTIVE DATE OF THESE TERMS, MUST BE RESOLVED BY FINAL AND BINDING ARBITRATION." *Id*. (capitalization in original). Moreover, the Terms and Conditions specify that "Dispute shall be interpreted broadly." *Id*.

The Website Terms of Use similarly provide that "any controversy, allegation, or claim aris[ing] out of or relat[ing] to the Service[7] . . . whether arising before or after the effective date of these Terms" constitutes a "Dispute" subject to the dispute resolution provisions of the Website Terms of Use. *Id*., Exhibits E and F. The Website Terms of Use also provide that "ANY AND ALL DISPUTES ARISING BETWEEN YOU AND VICTORIA'S SECRET (WHETHER BASED IN CONTRACT, STATUTE, REGULATION, ORDINANCE . . . OR ANY OTHER LEGAL OR EQUITABLE THEORY) . . . WHETHER ARISING BEFORE OR AFTER THE EFFECTIVE DATE OF THESE TERMS, MUST BE RESOLVED BY FINAL AND BINDING ARBITRATION." *Id*. (capitalization in original). The Website Terms of Use also specify that "Dispute shall be interpreted broadly." *Id*.

---

[7] As noted above, the term "Service" is defined to include use of the Website.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, STRIKE CLASS CLAIMS, AND STAY ACTION PENDING ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Herrera's claims are (1) premised on her access to and use of the Website, (2) relate to her relationship with Victoria's Secret through the Rewards Program, and (3) are based on federal and state statutes (the ADA and the Unruh Act). Each of her claims are a "Dispute" as defined by the parties' Arbitration Agreement within the Rewards Program Terms and Conditions and the Website Terms of Use. Therefore, Herrera's claims fall within the agreement to arbitrate.

### C.    The Court Should Strike or Dismiss Herrera's Class Allegations.

Herrera agreed that she would bring all claims against Victoria's Secret "ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS." *Id.*, Exhibit D (capitalization in original). Because the FAA requires the enforcement of arbitration agreements according to their terms, such a waiver is enforceable. *See Concepcion*, 533 U.S. at 339; *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 525 (2018) (explaining that arbitration agreements "must be enforced as written").

As the Supreme Court held in *Stolt-Nielson v. Animal Feeds Int'l Corp.*, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." 559 U.S. 662, 684 (2010) (emphasis in original). To impose class or representative arbitration on a party that has not expressly agreed to it would so fundamentally change the character of the arbitration as to deny that party the benefit of its bargain. *Id.* at 685-86. The words in the class waiver mean what they say: class proceedings are prohibited, whether in arbitration or in Court. The Court should dismiss the class claims. *See Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100, 1122 (E.D. Cal. 2023) (compelling the arbitration of a plaintiff's individual claims and dismissing class claims); *Dhaliwal v. Ace Hardware Corp.*, No. 2:22-cv-00446-DAD-KJN, 2023 WL 2555471, at *8 (E.D. Cal. Mar. 17, 2023) (same).

### D.    This Action Must Be Stayed Pending Arbitration.

Under the FAA, in any lawsuit "referable to arbitration," as is the case here, the court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). As the Supreme Court recently held: "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v.*

*Spizzirri*, 601 U.S. 472, 478 (2024). The plain statutory language thus "overrides any discretion a district court might otherwise have had to dismiss a suit." *Id.* at 477. Because Herrera's claims must be arbitrated and Victoria's Secret has requested a stay, this action must be stayed pending the outcome of any arbitration.

## VI.   <u>CONCLUSION</u>

Should the Court decide the merits of Victoria's Secret's Motion to Compel Arbitration, Victoria's Secret respectfully requests this Court to (1) compel Herrera to arbitrate her claims on an individual basis, (2) dismiss Herrera's class claims, and (3) stay this action pending the completion of such arbitration.

Dated:  December 12, 2025                    GREENBERG TRAURIG, LLP


                                             By: */s/ Ryan C. Bykerk*
                                                 Ryan C. Bykerk
                                                 Jason B. Jendrewski
                                                 Joseph M. Dietrich
                                                 Attorneys for Defendant VICTORIA'S SECRET & CO.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, STRIKE CLASS CLAIMS, AND STAY ACTION PENDING ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT